**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| DARREN WEBSTER,<br><br>Plaintiff,<br>v.<br><br>SGT. MODEN, et al.<br><br>Defendants. | Cause No. CV 25-65-M-DWM<br><br>**ORDER** |

Several motions are pending before the Court.

## I. BACKGROUND

Briefly put, Webster[1]'s Amended Complaint alleges he was assaulted and suffered excessive force while detained at the Missoula County Detention Center. (Doc. 49 at 5 and 9.) He also alleges that his related grievances were never answered, and his legal work was destroyed. (Doc. 49 at 11.)

## II. MOTION FOR SUMMARY JUDGMENT

Defendants Sgt. Cole Moden, Sergeant Marilyn Lacy, Jail Commander

[1] Darren Webster is also known as Jeffrey James Solice in various documents in the record. He filed this lawsuit under the name Webster.

Sheryl Ziegler, Corporal Scott Kautz, and Detention Officer Kale Rife (collectively "Defendants"), have moved for summary judgment. (Doc. 54.) Their motion is supported by a brief and a Statement of Undisputed Facts. (Docs. 55 and 56.) Plaintiff has responded.

Defendants' motion makes five points. First, Webster fails to state a claim against Defendant Sheryl Ziegler, despite naming her in the Amended Complaint. (Doc. 55 at 4.) Second, Defendants are not liable for any assault by Webster's cellmate. (Doc. 55 at 5.) Third, Defendant Lacy did not violate Webster's rights. (Doc. 55 at 8 – 10.) Fourth, Defendants Kale Rife and Russell Milton did not use excessive force against Webster, and if they did, they are entitled to qualified immunity. (Doc. 55 at 11 - 14.) And finally, Webster was able to file grievances at MCDF. (Doc. 55 at 17.) Defendants submitted a Statement of Undisputed Facts, which is supported by declarations of each Defendant, various detention center documents, and a video. (Docs. 56, 56.1, 56.2, 56.3, 56.4, 56.5 and 57.)

In response, Webster has submitted a Statement of Disputed Facts and a Response Brief. (Docs. 68 and 71.) Webster's brief is wide-ranging, starting with a discussion of ongoing concerns he has had about receiving documents during this litigation and communicating with opposing counsel while in restricted housing at Montana State Prison. (Doc. 71 at 1 – 9.) Webster appears to assert that additional time or discovery may help him establish a genuine issue of material fact for trial.

(Doc. 71 at 3.) He contends that he still has not received 1708 pages of evidence and, thus, cannot properly respond to Defendants' motion. (Doc. 71 at 9.) He also asserts he has not been able to watch the video provided by Defendants in support of their motion. (Doc. 71 at 9.) Webster is critical of the Commander's Log, the incident narrative from Defendant Rife, and the Incident Reports provided to Webster in discovery. (Doc. 71-1.) Commentary on those documents and skepticism as to their authenticity or legality, such as the absence of signatures, form the bulk of his response. Webster requests that all documents not signed or dated be held inadmissible. (Doc. 71-1 at 11.)

Webster filed a Statement of Disputed Facts, though it does not comply with L.R. 56.1(b). Webster responds selectively to Defendants' facts, and includes discussions of missing documents, and accusations of lying. (Doc. 68.) Webster made a subsequent filing that the Court includes in its review of his opposition to Defendants' motion. (Doc. 75.)

**A. Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims). The Court will, to the extent feasible, interpret Webster's filings as the basis of his disputed facts, despite his failure to comply with L.R. 56.1(b), while recognizing that "a district court has no independent duty to scour the record in search of a genuine issue of triable fact…" *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

**B. Analysis**

Webster has failed to establish that there is a dispute of material fact that would preclude summary judgment in Defendants' favor. The structure of the Court's analysis will follow Defendants' brief for clarity.

1. Defendant Ziegler is entitled to summary judgment

As Defendants' brief points out, Webster's Amended Complaint makes no allegations against Defendant Ziegler other than she "has been [sic] admittedly

stated that she will have extensive 'operational' policies, MCDF grievance process and all alleged illegalities or events at MCDF. 'She admits knowledge of all day to day events and responsibility thereof.'" (Doc. 49 at 3 (quotations in original).) Defendant Ziegler generally admits these allegations but disputes that they, without more, state a claim upon which relief may be granted. (Doc. 55 at 4.) Ziegler is correct.

Section 1983 imposes individual liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Supervising officers can be held liable under Section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012).

Webster has alleged no facts to support such a claim, nor has he responded at all to this point in Defendants' brief. Webster only alleges, in essence, that Ziegler is in charge at Missoula County Detention. That allegation alone fails to state a claim for relief. Ziegler is entitled to summary judgment.

2. Inmate Garza's assault on Webster does not state a constitutional claim

Webster's Amended Complaint alleges that he was assaulted by his cellmate, Garza, at Defendant Moden's encouragement. (Doc. 49 at 5.) Webster further alleges that unnamed guards failed to investigate the assault and accused Webster of lying. *Id.* Defendant Moden responds that he was on vacation from the time before Garza arrived at Missoula County Detention until after the assault occurred and therefore could not have "encouraged" Garza, as alleged. (Doc. 56-2.) Webster has not responded to this aspect of Defendants' brief, nor provided any evidence to contradict Moden's Declaration.

(Webster has asserted that Defendants' unsworn declarations should be struck. (Doc. 72.) The declarations of defendants are declared under penalty of perjury. (Docs. 56-1, 56-2, 56-3. 56-4, and 56-5.) Rule 56 requires only that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [...] declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also* 28 U.S.C. § 1746. Defendants' unsworn declarations comply with these directives.)

Additionally, Defendants provide a log entry that shows staff investigated the incident but "could not find enough substantial evidence that this incident occurred." (Doc. 56-1 at 8.) Neither inmate had apparent injuries, and neither was

written up for any altercation. This evidence rebuts Webster's assertion that guards did not investigate the incident and that he was going to be written up for it. (Doc. 29 at 5.) Webster has not responded to this portion of Defendants' brief or produced any evidence related to the Garza incident. Defendants are entitled to summary judgment.

3. Defendant Lacy is entitled to summary judgment

Webster alleges that after he grieved the fact that copies of his legal work were given to another inmate, Defendant Lacy came to his cell and yelled at him. (Doc. 49 at 7.) Webster was later placed in "the hole," though the connection between these events is not apparent in Webster's Amended Complaint. (Doc. 49 at 8.)

Defendants dispute that Webster's legal papers were given to another inmate, or that Lacy yelled at Webster. (Doc. 55 at 8 – 9.) Defendants provide declarations in support of their position, including clarifying that Defendant Lacy is a woman, not a man, as labelled by Webster, undermining the credibility of Webster's claim. Also, Webster's paperwork was not given to another inmate. (Doc. 56 at 3 – 4.) However, neither of those occurrences, were they true, are violations of Webster's constitutional rights. At most, Webster may have suffered negligence if his paperwork was mishandled. And yelling, without more, is not a violation of Webster's constitutional rights. "[V]erbal harassment generally does

not violate the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)). "[T]he exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which "we do not approve," but which do not violate the Eighth Amendment. *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) (quoting *Somers v. Thurman,* 109 F.3d 614, 622 (9th Cir.1997) (internal quotation marks omitted)). Webster's allegations do not state a claim for relief, and Defendants are entitled to summary judgment.

As to Webster's statements regarding segregation, he does not state that he was improperly placed in segregation. (Doc. 49 at 8 – 9.) He states that he did not ask to be moved, but that statement, without more, does not state a claim upon which relief may be granted. Temporary placement of prisoners in "safety cells," without more, is not a constitutional violation. *See Anderson v. County of Kern*, 45 F.3d 1310, 1313–15 (9th Cir. 1995). Webster's allegation appears to be intended more as context for his following claims against Defendants Rife and Milton. Defendants have provided evidence to show why Webster was placed where he was. Webster's allegations regarding his placement do not state a claim, nor has he identified a disputed fact regarding his segregation that would warrant further proceedings.

4. Defendants Rife and Milton Did Not Violate Webster's Constitutional Rights.

Thus far, the only claim sufficiently alleged in Webster's Amended Complaint is his claim that Defendants Rife and Milton used excessive force on him. Webster alleges that Rife and Milton were moving him in the facility when they began to hit him with collapsible batons and dragged him down the hall. (Doc. 49 at 9 - 10.) This allegation is undated in the Amended Complaint. (It is worth noting that this allegation did not appear at all in Webster's original Complaint in this matter. (Doc. 2.))

In response, Defendants assert they used an appropriate level of force when moving Webster. (Doc. 55 at 11.) The events of June 12, 2025, are described in incident reports, the Declaration of Defendant Rife, and videos filed by Defendants. (Docs. 56, 56-1, 56-4, and 57.) Webster's Statement of Disputed Facts does not rebut the facts provided by Defendants, but does discuss the incident in his cell when he was awakened by Defendants Rife and Milton. (Doc. 68 at 7.) Webster's allegation here appears to have shifted from an assault in the hallway to a claim that "they chose for their own reasons to viciously assault me while asleep!" (Doc. 68 at 7 (cleaned up).) Webster does not otherwise contradict the evidence presented by Defendants. Specifically as to Rife, Webster states "Nothing to say to Rifes (unsworn Dec.) as the Court has that evidence in front of them,

other than I challenge every word that man utters in this case!" (Doc. 68 at 9 (cleaned up).)

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Constitution], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The evidence here shows that Defendants' use of force was appropriate.

The videotape provided by Defendants consists of four segments, each taken from a different camera in the facility. The Court may use the video to assist in its determination of what a reasonable jury could conclude. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).The videos show Defendants Rife and Milton approaching an apparently sleeping Webster in a cell. Webster awakens, yells at Defendants, and refuses to turn so that he could be cuffed. After a brief scuffle, Webster is forcibly put on his stomach and cuffed. Defendants then escort him backwards from that cell, across an open area, and into another cell. In the second cell, four staff assist an initially-handcuffed Webster out of his clothing and into a suicide smock. They ask him if he is hurt and tell him that a nurse will come to evaluate him. Webster is compliant, and there is no further use of force.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial. " *Matsushita*

*Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986) (footnote omitted). The video evidence is consistent with the contemporaneous reports of the officers filed at the time of the incident. (*Cf.* Doc. 56-1 at 22 – 23 and Doc. 57.) No batons were employed, Webster was not dragged anywhere, and the force used initially in Webster's cell was not excessive to gain compliance with the officers' requirement to handcuff him. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Webster has not established the existence of a disputed fact that would warrant trial in this matter.

5. Webster was able to file grievances at Missoula County Detention

Webster's final claim is that Defendant Lacy and Kautz "repeatedly refused to aid [him] in any way w/ the filing of grievances." (Doc. 49 at 13.) Defendants assert that this allegation is refuted by Webster's filing of at least 20 grievances during his time at Missoula County. (Doc. 55 at 17.) Webster did not respond to this aspect of Defendants' motion. Defendants are entitled to summary judgment.

## III. CONCLUSION

Webster has failed to adduce evidence to convince the Court that there remains a genuine dispute as to any material fact in this matter. Defendants are

entitled to summary judgment as a matter of law.

Accordingly, it is HEREBY ORDERED:

1. Defendants' motion for summary judgment is **GRANTED**. (Doc. 54.)

The Clerk of Court is directed to enter judgment pursuant to Fed. R. Civ. P. 58.

2. All pending motions are denied as moot.

3. The Court certifies that appeal would not be taken in good faith.

DATED this 14th day of October, 2026.

Donald W. Molloy, District Judge
United States District Court